## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | CR 07-B-0375-E |
| | ) | |
| HUGO ARTEAGA-RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is presently pending before the court on defendant's Motion to Suppress. (Doc. 8.)[1] Defendant asks the court to suppress "evidence seized from the defendant's truck and . . . defendant's statements made to law enforcement." (*Id*. at 1.) For the reasons set forth below, defendant's Motion to Suppress is **DENIED**.

On July 31, 2007, Heflin Police Department Sergeant Chad Maddox stopped a silver Toyota truck on eastbound I-20 for following too closely.[2] Defendant, Hugo Arteaga-

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]In his Motion to Suppress, defendant does not dispute the validity of the initial stop. However, at oral argument, defendant pointed out that the video recording of the stop showed defendant's truck following the U-Haul trailer, and, on the video, the truck did not appear to be too close. Sergeant Maddox testified that the distance between vehicles should 20 feet for each 10 miles per hour. *See* Ala.Code 1975 § 32-5A-89(a)("Except when overtaking and passing another vehicle, the driver of a vehicle shall leave a distance of at least 20 feet for each 10 miles per hour of speed between the vehicle that he is driving and the vehicle that he is following."). He testified that vehicles were going about 70 miles per hour; therefore, the distance between the vehicles should have been 140 feet. He testified that, when he first observed the truck, it was less than 50 feet behind the U-Haul trailer. The court finds Sergeant Maddox's testimony to be credible.

Ramirez, was the sole occupant of the truck.  Sergeant Maddox asked defendant for his driver's license and proof of insurance.  Defendant gave Sergeant Maddox a California driver's license and a rental agreement for the truck from Dallas, Texas.  He told Sergeant Maddox he was on his way to Atlanta, Georgia, to buy a truck for his cousin.  Defendant said he had flown to Dallas from California and rented the truck for purposes of driving from Dallas to Atlanta, Georgia.  He told Sergeant Maddox that his cousin did not make the trip because he had to work.

After approximately three minutes, Sergeant Maddox returned to his patrol vehicle to run a computer check on defendant's driver's license and the truck's license plate and to request back-up from the Alabama State Troopers.  He testified that he had noted defendant did not give him direct answers, he was visibly nervous,[3] an open map was on the front seat,

---

[3]Sergeant Maddox testified that he observed defendant's carotid artery was bulging.

he had energy drinks in the car, and his travel plans were unusual.  While in his car, Sergeant Maddox ran the tag number of the truck and defendant's license number through his computer and wrote out a warning ticket.  Sergeant Maddox returned to defendant's truck approximately nine minutes after the stop began.

Sergeant Maddox testified that he intended to ask defendant more questions and to ask if he could search the truck.  He testified that he was suspicious based on the factors noted above.  He asked defendant who he was meeting in Atlanta.  Defendant told Sergeant Maddox that did not know the name of the person he was supposed to meet in Atlanta and he did not have his telephone number; however his cousin knew the man.  Defendant told Sergeant Maddox that he was to call his cousin from Atlanta.  Sergeant Maddox testified defendant avoided eye contact and appeared extraordinarily nervous while answering his questions.  Sergeant Maddox asked for defendant's consent to search the truck; according to Sergeant Maddox defendant appeared dazed and did not respond.  Then Sergeant Maddox asked defendant if he had anything illegal in the truck, and asked, "Do you mind if I search the truck?"  Defendant replied, "No," and added, "[B]ut I don't have anything."  Sergeant Maddox testified he thought defendant gave him consent to search the truck.  The traffic stop had lasted a little more than ten minutes at this time.

Sergeant Maddox decided to run his trained, drug-sniffing dog around the truck.  The dog was on the scene in Sergeant Maddox's patrol car.  Approximately 13 minutes after the

3

traffic stop began, the dog alerted in front of the truck.  After a short break, the dog alerted

on the side of the truck, almost 15 minutes after the traffic stop began.

At this point, Sergeant Maddox told the defendant that he was going to search the

truck because his dog had alerted on the truck.  He asked defendant when he had rented the

truck and defendant told him "yesterday."  Defendant told Sergeant Maddox, in response to

his question, that no one had put anything inside the truck.

Upon searching the truck, Sergeant Maddox looked under the hood and noticed that

the nut on the battery and the battery bracket were "all tooled up," which he found unusual

because the truck was relatively new.  In the bed of the truck, Sergeant Maddox saw two car

batteries.  When asked why he had two extra car batteries, defendant told Sergeant Maddox

that the Atlanta truck had a big stereo system that drained the battery.  He also told Sergeant

Maddox that the batteries belonged to his cousin.

Sergeant Maddox probed the batteries with a thin wire.  He testified the wire should

have gone to the bottom of the batteries, but it only went in to the batteries one half inch.

Sergeant Maddox removed the top on one of the batteries and saw an layer of epoxy.  He

drilled a hole through this layer and, when he withdrew the drill, it had a cover of a white

powdery substance that looked like cocaine inside the battery.  Subsequent forensic analysis

of the substance revealed it to be cocaine hydrochloride.

Defendant contends that Sergeant Maddox's "questioning of the Defendant clearly

exceeded the duration and scope of a constitutionally valid *Terry* stop." (Doc. 6 at 2 [citation

omitted].)  He contends Sergeant Maddox did not have "reasonable suspicion" to continue

to detain him after Sergeant Maddox told defendant he was not going to give defendant a

ticket.  (*Id*. at 3.)

A traffic stop cannot last "any longer than necessary to process the traffic violation

unless there is articulable suspicion of other illegal activity."  *United States v. Purcell*, 236

F.3d 1274, 1277 (11th Cir. 2001).  In this circuit –

> An officer may only prolong a traffic stop in special circumstances.
> First, police officers conducting a traffic stop may "prolong the detention to
> investigate the driver's license and the vehicle registration, and may do so by
> requesting a computer check."  *Purcell*, 236 F.3d at 1278.  Similarly, out of
> interest for the officer's safety, we have found that officers may permissibly
> prolong a detention while waiting for the results of a criminal history check
> that is part of the officer's routine traffic investigation.  *Id*. at 1278.  In
> addition, an officer may prolong a traffic stop if he has "articulable suspicion
> of other illegal activity."  *Id*. at 1277.

*United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003).   As to reasonable suspicion,

the Eleventh Circuit held:

> [R]easonable suspicion requires that the officer be able to point to specific and
> articulable facts which, taken together with rational inferences from those
> facts, reasonably warrant that intrusion.  Further, . . . reasonable suspicion is
> determined by the totality of the circumstances such that, while some
> individual factors may be consistent with innocent travel they can also, when
> taken together, give rise to a reasonable suspicion.  Nevertheless, reasonable
> suspicion must be more than an inchoate hunch, and the Fourth Amendment
> accordingly requires that police articulate some minimal, objective justification
> for an investigatory stop.

*Id*. at 1107 (quoting *United States v. Tapia*,  912 F.2d 1367, 1370 (11th Cir. 1990))(internal

quotations omitted).  The Eleventh Circuit has found reasonable suspicion when the driver

5

appears unusually nervous,[4] and has unusual or suspicious travel itineraries.[5]  However, factors that "would likely apply to a considerable number of those traveling for perfectly legitimate purposes" and that "do not reasonably provide suspicion of criminal activity" will not support a finding of reasonable suspicion.  *Id*. at 1109.

Based on the testimony of Sergeant Maddox and a careful review of the video recording of the traffic stop, the court finds that Sergeant Maddox had sufficient "reasonable suspicion to continue to question defendant, to check defendant's driver's license and the license plate of the truck, and to ask for consent to search the truck.  The court finds particularly persuasive Sergeant Maddox's testimony that defendant appeared unusually nervous, and defendant's unusual travel itinerary.  The court finds that flying from California to Texas to rent a car to drive to Georgia is sufficiently suspicious to warrant Sergeant Maddox to ask additional questions.  *See United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991).  Moreover, his questions did not delay the detention to an unreasonable extent under the circumstances.  *United States v. Hernandez*, 418 F.3d 1206, 1209 n.3 (11th Cir. 2005), *cert. denied* 127 S. Ct. 303 (2006); *see also United States v. Purcell*, 236 F.3d 1274,

---

[4]*See Boyce*, 351 F.3d at 1108; *see also United States v. Ramirez*, 476 F.3d 1231, 1233, 1235 (11th Cir. 2007); *United States v. Bivins*, CR No. 2:07cr28-MEF, 2007 WL 1673926, *4 (M.D. Ala. June 11, 2007).

[5]*Boyce*, 351 F.3d at 1109 (citing *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001); *United States v. Wood*, 106 F.3d 942, 947 (10th Cir. 1997); *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991)).

1280 (11th Cir. 2001)("Questions which do not extend the duration of the initial seizure do not exceed the scope of an otherwise constitutional traffic stop.")

After running the license check, Sergeant Maddox returned to the truck and asked for permission to search the truck and defendant consented.  At this point, any further detention was consensual.  *Hernandez*, 418 F.3d 1206, 1209-10 (11th Cir. 2005)("Once Defendant gave her consent, the clock re-started for purposes of evaluating the reasonableness of the duration of the intrusion.")(citing *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999)).

The court notes the Eleventh Circuit has held that "it is unreasonable extensions of the duration – not the scope of conversation – that could render an otherwise justified detention unreasonable for Fourth Amendment purposes."  *Id.* at 1209 n.3 (citing *Muehler v. Mena*, 544 U.S. 93, 101 (2005)).  In dicta, the court noted:

> Where at its inception a traffic stop is a valid one for a violation of the law, we doubt that a resultant seizure of no more than seventeen minutes can ever be unconstitutional on account of its duration; ***the detention is too short***.

*Hernandez*, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005)(emphasis added).[6]

The time from the initial stop until the dog alerted on the truck was less than about 15 minutes.  Therefore, the court finds no illegal seizure between the time of the stop until the dog alerted.  After the dog alerted, Officer Maddox had probable cause to search the truck

---

[6]"We are not bound to follow dictum, but do accord it any respect it earns through its persuasive value."  *Young v. New Process Steel, LP*, 419 F.3d 1201, 1204 (11th Cir. 2005)(citations omitted).

and detain defendant.  *See United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003)(citing *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993)).

Defendant's Motion to Suppress is **DENIED**.  The government may introduce evidence of the cocaine found in the batteries and defendant's statements to Officer Shaw at trial.

**DONE**, this the 28th day of January, 2008.

Sharon Lovelace Blackburn
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE